**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

WILLIAM WESLEY DUTTON,      )
                               )    Civil Action No.
            Plaintiff,     )
                               )
v.                               )
                               )
MICHAEL CORDERO, ERIC BENN,    )
and ARMIDA M. MACMANUS, a/k/a   )
ARMIDA M. DELPINO,          )
                               )
            Defendants.  )
_____)

**FIRST AMENDED COMPLAINT;
JURY DEMAND**

Plaintiff William Wesley Dutton brings this action against Defendants Michael Cordero,

Eric Benn, and Armida M. MacManus, also known as Armida M. Delpino, for violating

Plaintiff's rights under the Fourth Amendment to the U.S. Constitution.  As grounds therefor,

Plaintiff alleges as follows:

**JURISDICTION AND VENUE**

1.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

2.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

**PARTIES**

3.     Plaintiff William Wesley Dutton is a citizen and resident of the State of New

Mexico.

4.     Defendant Michael Cordero is a Special Agent of the Federal Bureau of

Investigation ("FBI") and, on information and belief, is assigned to the FBI's office at the El Paso

Federal Justice Center, 660 South Mesa Hills Drive, #3000, El Paso, Texas, 79912.  Defendant

Cordero is being sued in his individual capacity, albeit for acting under color of federal law.

5.      Defendant Eric Benn is a Special Agent for the U.S. Department of Justice, Office of Inspector General ("DOJ/OIG") and, on information and belief, is assigned to DOJ/OIG's office at 4050 Rio Bravo, Suite 200, El Paso, Texas, 79902.  Defendant Benn is being sued in his individual capacity, albeit for acting under color of federal law.

6.      Defendant Armida M. MacManus, also known as Armida M. Delpino, is a Special Agent of the FBI and, on information and belief, is assigned to the FBI's office at Loretto Town Center, 505 S. Main Street, #115, Las Cruces, New Mexico, 88001.   Defendant MacManus is being sued in her individual capacity, albeit for acting under color of federal law.

## STATEMENT OF FACTS

7.      At various times since approximately March 2009, Plaintiff, a graduate of the New Mexico State Police Academy and former State of New Mexico livestock investigator, provided information to the FBI and other law enforcement agencies about illegal activity in Texas and New Mexico, including information about illegal narcotics trafficking, fugitives, public corruption, and terrorism.   One of Plaintiff's contacts at the FBI was Defendant Cordero.

8.      Several years earlier, Plaintiff had been involved in a farm accident that left him partially disabled.  Plaintiff's disabilities prevent him from traveling.  He also requires regular medication.

9.      In February 2014, Plaintiff was living with his parents on a pecan farm approximately ten miles southwest of Anthony, New Mexico.  The street address of Plaintiff's home was 2100 Highway 28, Anthony, New Mexico  88021.  The area surrounding the farm was rural and sparsely populated.

10.     Between 2:00 and 3:00 p.m. on an afternoon in the first week of February 2014, Defendant Cordero knocked on Plaintiff's front door.  Plaintiff was alone in the house.  Neither of his parents was at home.  Plaintiff answered the door and greeted Defendant Cordero.

11.     Plaintiff noticed Defendants Benn and MacManus standing approximately 20 feet behind Defendant Cordero in Plaintiff's front yard.  Plaintiff did not know Defendant MacManus and had never met her.

12.     Plaintiff also noticed two government vehicles parked on the gravel road directly in front of Plaintiff's home.  The first was a maroon, 4-door sedan, which Plaintiff assumed was Defendant Cordero's vehicle.  The second was a grey, 4-door sedan parked directly behind the maroon sedan.  Plaintiff observed two persons sitting in the front seat of the grey sedan.  Plaintiff did not recognize either of the persons in the grey sedan.

13.     Defendants Cordero and Benn had visited Plaintiff at home on many previous occasions, and Plaintiff typically invited them inside.  In addition, Defendants Cordero and Benn typically parked on a driveway approximately 30 yards west of Plaintiff's home instead of directly in front of the home.

14.     Plaintiff invited Defendants Cordero, Benn, and MacManus inside.  He also asked Defendant Cordero why they had parked in front of the home instead of on the driveway and requested that the vehicles be moved to the driveway.

15.     Defendants declined to enter.  Instead, Defendant Cordero said to Plaintiff, "No. You're getting in the car with us."

16.     Plaintiff believed that Defendants Cordero and Benn, whom he knew to be federal agents, were armed.  Plaintiff believed it was likely that Defendant MacManus and the two persons in the grey sedan also were government agents and also were likely armed.  Plaintiff did not feel free to refuse Defendant Cordero's instructions.

17.     Plaintiff stated to Defendant Cordero, "You know I cannot travel.  I have to get my medication."

18.     Defendant Cordero permitted Plaintiff to retrieve his medication and waited for

- 3 -

Plaintiff inside the doorway while he did so.  When Plaintiff returned, Defendant Cordero told Plaintiff he had to escort Plaintiff to the vehicles.

19.     As Plaintiff and Defendant Cordero left the house, Plaintiff noticed that the vehicles had been moved to the driveway and that the grey sedan containing the two unknown persons was again parked behind the maroon sedan.  Defendants Benn and MacManus were already in the maroon sedan.

20.     While they were walking to the vehicles, Plaintiff told Defendant Cordero that he wanted to speak with his attorney.  Defendant Cordero cursed and told Plaintiff that he could not contact the attorney.  Plaintiff told Defendant Cordero a second time that he wanted to speak with his attorney.  Defendant Cordero cursed again and gave Plaintiff the same, negative response.

21.     Before they reached the vehicles, Defendant Cordero asked Plaintiff if he had his cell phone.  Plaintiff responded, "No."   Defendant Cordero then instructed Plaintiff to return to the house to retrieve his cell phone.  As Defendant Cordero escorted Plaintiff back to the house to retrieve the cell phone, Defendant Cordero said to Plaintiff, "You are not leaving my custody."

22.     Once Plaintiff retrieved his cell phone from the house, Defendant Cordero escorted Plaintiff back to the vehicles.  Defendant Cordero placed Plaintiff in the rear, driver's side seat of the maroon vehicle and closed the door behind Plaintiff.  Defendant Benn was sitting in the rear, passenger side seat next to where Defendant Cordero had directed Plaintiff to sit.  Defendant MacManus was sitting in the front, passenger side seat.  Defendant Cordero got into the driver's seat and locked the doors using a control device near the driver's seat.  At no point was Plaintiff free to leave.

23.     Once inside the vehicle, Plaintiff again asked to be allowed to speak with his attorney.  Again, Plaintiff's request was denied with foul, abusive language by Defendant Cordero and, this time, by Defendant Benn.  Plaintiff then said to Defendants Cordero, Benn, and

- 4 -

MacManus, "I can't sit in this car like this.  I have health issues."  Defendant Cordero responded,

"You're going to sit your f***ing ass right here."

24.     Defendants Cordero, Benn, and MacManus began interrogating Plaintiff inside the

locked vehicle.  Defendants Cordero, Benn, and MacManus claimed that Plaintiff had provided

false information, that they had approached Plaintiff's sources directly, and that

Plaintiff's sources had contradicted information Plaintiff had provided Defendants Cordero and

Benn.  The interrogation centered on information Plaintiff had provided Defendants Cordero and

Benn.

25.     Plaintiff had never met Defendant MacManus before that afternoon.  Defendants

Cordero and Benn represented to Plaintiff that Defendant MacManus was an attorney with either

the U.S. Department of Justice or the U.S Attorney's Office (Plaintiff does not recall which) and

that she could arrange for Plaintiff to be granted immunity if Plaintiff cooperated with them.  At

no point did Defendant MacManus refute or deny the representations by Defendants Cordero and

Benn about her status or ability to offer immunity.

26.     On information and belief, the representations by Defendants Cordero and Benn

about Defendant MacManus were false.  On information and belief, Defendant MacManus is a

Special Agent of the FBI, not an attorney with either the U.S. Department of

Justice or the U.S. Attorney's Office, and had no authority to offer or grant immunity.

27.     Defendants Cordero, Benn, and MacManus never advised Plaintiff that a warrant

had been issued for his arrest, that he was under arrest, or that he was suspected of committing

any crime.  Plaintiff repeatedly asked if he was under arrest and invoked his right to counsel.

Plaintiff's repeated request and invocations of his right to counsel were ignored.  In response to

one such request, Defendant Cordero cursed at Plaintiff again and exclaimed,

"You're not talking to anyone."  Defendant Benn echoed Defendant Cordero's response.

28.     At one point during the interrogation, Plaintiff offered to call his sources to have them confirm information Plaintiff had provided to Defendants Cordero and Benn.  Defendants Cordero, Benn, and MacManus agreed, but wanted to record Plaintiff's conversations with his sources.  Because Defendants Cordero, Benn, and MacManus had no recording equipment with them, Defendant MacManus was tasked with obtaining the equipment from her office.  Defendant Cordero unlocked the car long enough for Defendant MacManus to exit, then relocked the car doors after she had exited.  Defendant MacManus got into the grey sedan that had remained behind the vehicle in which Plaintiff was being interrogated, and drove off.

29.     Defendants Cordero and Benn continued to interrogate Plaintiff inside the locked vehicle.  Plaintiff was not allowed to leave the vehicle even to use the restroom.  It was only when Plaintiff stated that he would urinate inside the vehicle that Defendant Cordero unlocked the doors and allowed Plaintiff to exit briefly to urinate behind a bush.  Defendants Cordero and Benn then escorted Plaintiff back into the vehicle, relocked the doors, and continued the interrogation.

30.     At approximately 5:00 p.m., Plaintiff's mother returned home.  Because the maroon sedan in which the interrogation was taking place was parked where Plaintiff's mother usually parked her vehicle, Plaintiff's mother had to find another place to park.  After parking her vehicle, Plaintiff's mother approached the sedan to see what was going on.  Defendant Cordero lowered the window and cursed at Plaintiff's mother, telling her to leave.

31.     Defendant MacManus returned approximately one and a half hours after she had left.  Defendant Cordero unlocked the doors, allowed Defendant MacManus to enter, then relocked the doors after she had entered.  The grey sedan containing the two other, unknown individuals resumed its position behind the maroon sedan in which Plaintiff was being interrogated.

32.     Defendants Cordero, Benn, and MacManus demanded that Plaintiff sign a consent form authorizing them to record Plaintiff's telephone conversations with his sources while they listened in on the calls.  He did so, albeit only under compulsion.  Defendants Cordero, Benn, and MacManus directed Plaintiff to make at least two telephone calls, which Defendants Cordero, Benn, and MacManus recorded.  Defendants Cordero, Benn, and MacManus passed notes to Plaintiff instructing him to ask particular questions.  Plaintiff did as he was instructed.

33.     The interrogation continued until between approximately 10:00 p.m. and 11:00 p.m.  At the end of the interrogation, Defendant MacManus said to Defendant Cordero, "You can't arrest him.  We've got to let him go."  Defendant Benn agreed, saying, "You can't arrest him.  I'm satisfied."  Defendant Cordero cursed.

34.     Defendant Cordero unlocked the doors, and Plaintiff was allowed to leave the vehicle.  Both Defendant Cordero and Benn told Plaintiff to "keep his mouth shut."  Defendant Cordero cursed at Plaintiff yet again, saying he hoped he never saw Plaintiff again.  Defendants Cordero, Benn, and MacManus then drove off, as did the two unknown persons in the grey sedan.

35.     On at least two prior interactions, FBI agents came to Plaintiff's home and violated Plaintiff's constitutional rights.   In July 2010, FBI agents searched Plaintiff's home without a warrant and seized documents, computers, and electronic equipment.  In August 2012, Defendant Cordero and other, unidentified FBI agents searched Plaintiff's home again, also without a warrant, and seized Plaintiff's personal property, papers, notebooks, charts, computers, and cell phone.  Plaintiff's items have never been returned to him.

## COUNT I
### (Violation of the Fourth Amendment – *Bivens* Action)

36.     Plaintiff realleges paragraphs 1 through 35 as if fully stated herein.

Plaintiff enjoys the right to be secure in his person against unreasonable searches and seizures, as guaranteed by the Fourth Amendment to the U.S. Constitution.

37.     Defendants Cordero, Benn, and MacManus, acting within the course and scope of their authority as federal law enforcement officials and under color of federal law, deprived Plaintiff of his rights under the Fourth Amendment to the U.S. Constitution by arresting, detaining, and interrogating Plaintiff without an arrest warrant or probable cause that Plaintiff had committed a crime.

38.     Plaintiff suffered damages as a direct and proximate result of the violation of his constitutional rights by Defendants Cordero, Benn, and MacManus.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendants Cordero, Benn, and MacManus:  (i) declaring Defendants' conduct to be in violation of Plaintiff's rights under the Fourth Amendment to the U.S. Constitution; (ii) enjoining Defendants from violating Plaintiff's Fourth Amendment rights in the future; (iii) awarding Plaintiff nominal and compensatory damages, reasonable attorney fees, and the costs of this action; and (iv) granting any and all other relief that the Court deems just and proper.

## **JURY DEMAND**

Pursuant to Fed.R.Civ.P. 38, Plaintiff hereby demands a trial by jury of all issues raised in this matter that may be so tried.

Dated:  September 2, 2016                    Respectfully submitted,

                                             JUDICIAL WATCH, INC.

                                             */s/ Paul J. Orfanedes*
                                             Paul J. Orfanedes
                                             D.C. Bar No. 429716
                                             Robert D. Popper
                                             D.C. Bar No. 1023592
                                             Ramona R. Cocta
                                             D.C. Bar No. 501159
                                             425 Third Street SW, Suite 800
                                             Washington, DC  20024
                                             Tel:    (202) 646-5172
                                             Fax:    (202) 646-5199
                                             Email: porfanedes@judicialwatch.org
                                                     rpopper@judicialwatch.org
                                                     rcotca@judicialwatch.org

                                                     And

                                             Angelo J. Artuso
                                             LAW OFFICE OF ANGELO J. ARTUSO
                                             P.O. Box 51763
                                             Albuquerque, NM 87181-1763
                                             Tel:     (505) 306-5063
                                             Email:  angelo.artuso@brytewerks.com

                                             ***Attorneys for Plaintiff***


      I HEREBY CERTIFY that on September 2, 2016, I filed the foregoing pleading
electronically through the CM/ECF system, which caused the parties and counsel entitled to
receive service and/or notice to be served by electronic means, as more fully reflected on the
Notice of Electronic filing:

                                             *s/ Paul J. Orfanedes*
                                             Paul J. Orfanedes